IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Joshua Topaz Anderson (Y-69192), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 23-cv-2557 |
| v. ) | |
| ) | Hon. Jorge L. Alonso |
| Lt. Little, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joshua Topaz Anderson, formerly an inmate at the Will County Adult Detention Facility (ADF), brought this *pro se* civil rights action alleging racial discrimination in violation of his Fourteenth Amendment rights due to the denial of an inmate worker position at the jail. Now before the Court is Defendant's motion for summary judgment, which is granted for the reasons stated below. Civil case terminated.

**PRELIMINARY MATTERS**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). A response may not set forth new facts that are not responsive to the asserted fact or assert legal arguments. LR 56.1 (e)(2). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Because Plaintiff is proceeding *pro se*, Defendant served him with a Local Rule 56.2 Notice to Unrepresented Litigants Opposing Summary Judgment. ECF No. 57. Plaintiff responded to the motion, submitting a response to Defendant's Statement of Facts, ECF No. 63, a memorandum in response to the motion, ECF No. 64 at 3-5, and various exhibits in support of his factual responses, *id.* at 1, 6-50. The Court takes as true any factual statements Plaintiff has admitted or which he has not properly disputed to the extent those facts are supported by the record. *Lamz*, 321 F.3d at 683.

## BACKGROUND

Plaintiff brought this *pro se* civil rights action under 42 U.S.C. § 1983, alleging that Defendant Nathan Little racially discriminated against him by denying his request to be a tender worker at the ADF, in violation of Plaintiff's constitutional rights. ECF No. 56 ¶ 1. Defendant is Black, as is Plaintiff. *Id.* ¶ 2. From February 2022 to February 2023, Defendant was the Classification Sergeant at the ADF. *Id.*

The ADF uses inmate workers to assist with the provision of food and laundry services within the jail. *Id.* ¶ 5. There are two types of inmate workers at the ADF: tender workers and pod workers. *Id.* ¶ 6. Pod workers perform work inside housing units at the ADF. *Id.* Tender workers work outside their housing units in the ADF's kitchen, laundry room, and exterior areas. *Id.*

Former ADF Deputy Chief Vincent Perillo provided a declaration stating that the tender worker position presents a higher security risk than pod workers because pod workers do not move outside of their secured location. *Id.* ¶ 7. Tender workers, on the other hand, perform their jobs at locations outside of their housing units and have to be moved from the housing unit to those locations on a daily basis. *Id.* Plaintiff disputes this, stating that when he worked as a pod worker for D-Pod, he was housed in C-Pod, and had to be transported three or more times a day to D-Pod to do his work. *See* ECF No. 63 ¶ 7. Plaintiff was searched by correctional officials while going to and returning from work just as tender workers were. *Id.*

Perillo averred that the security risk between the two types of inmate workers is different because pod workers work in housing units where a pod officer is always on duty. ECF No. 56 ¶ 8. Tender workers working in ADF's kitchen and laundry room are supervised by civilian staff who must complete their own assignments. *Id.* ¶ 9. Due to the nature of the work, tender workers are not in handcuffs or restraints while in the kitchen, laundry room, or exterior space. *Id.* Plaintiff contends there isn't "much differen[ce]" between the supervision offered by pod officers, who also are supervising dozens of inmates while completing their assignments, and the supervision offered by civilian staff who supervise tender workers. *See* ECF No. 63 ¶ 8.

Another security risk that exists for tender workers is that they work with utensils or other items that can be used as weapons or for unlocking devices, and a tender worker could steal such an item from their work location and bring it back to a housing unit. ECF No. 56 ¶ 10. Plaintiff disputes this, contending that tender workers have access to equipment that can be used as a weapon, and inmates more generally have access to items that can be weapons. ECF No. 63 ¶ 10.

The tasks of selecting inmate workers and monitoring their performance are normally handled by the ADF's Classification Unit. ECF No. 56 ¶ 12. Plaintiff does not dispute this, but

3

adds that correctional officers can give recommendations for employment, and that correctional officers and civilian staff supervise inmate workers. *See* ECF No. 63 ¶ 12. The Classification Unit is staffed by a Classification Sergeant and four Classification Specialists. ECF No. 56 ¶ 13. The ADF's eligibility criteria for inmate workers is set forth in written guidelines. *Id.* ¶ 14. One of the eligibility criteria concerns the seriousness of the criminal charges pending against the inmate, and precludes inmates who are charged with murder, sex offenses, home invasion, mob action, or other Class X felonies from being considered for the tender worker position. *Id.* ¶ 15.

In February 2022, Defendant became the Classification Sergeant. *Id.* ¶ 16. On May 20, 2022, Plaintiff submitted a request to be considered for a tender worker position. *Id.* ¶ 17. A Classification Specialist responded to that request by indicating that Plaintiff was not eligible to be a tender worker due to the charges against him. *Id.* ¶ 18.

On May 22, 2022, Plaintiff submitted a grievance complaining about the response to his tender worker request, stating in part, "how am I not eligible for tender status due to my charges [i]f Johnny McDonald is housed on a tender pod and his charges are first degree murder and his bond is $1,000,000. [B]y him being white I feel this is racial discrimination because my charges are the same as his." *Id.* ¶ 19; ECF No. 56-5. Defendant received and investigated Plaintiff's grievance. *Id.* ¶ 20. Defendant reviewed Plaintiff's booking card, which indicated that Plaintiff had been booked into the ADF in May 2019 on multiple criminal charges, including a charge of first-degree murder. *Id.* ¶ 21. He also reviewed the list of then-current tender workers and found none named McDonald. *Id.* ¶ 22. Plaintiff attempts to dispute this by contending that Defendant should have realized that "McDonald" was a misspelling of inmate Johnathon Middono's name because the other details about "McDonald" matched Middono's description. ECF No. 63 ¶ 22. Based on the results of his investigation, Defendant denied Plaintiff's grievance as unfounded because

4

Plaintiff was not eligible for tender worker status due to his criminal charges.[1] ECF No. 56 ¶ 23. On May 25, 2022, Plaintiff appealed the denial of the grievance. *Id.* ¶ 24. Defendant denied the appeal, stating that Plaintiff was not cleared for tender status. *Id.* ¶ 25.

Defendant avers that his decision to deny Plaintiff's request to be a tender worker was based solely on the fact that Plaintiff's criminal charges included a first-degree murder charge, which made him ineligible for that position under the ADF's established criteria. *Id.* ¶ 26. He states that he did not consider Plaintiff's race in denying his request to be a tender worker. *Id.* ¶ 27. Plaintiff's response to this is improper legal argument, as he contends that once it was brought to Defendant's attention that a white inmate was allowed to work as a tender worker with similar charges to Plaintiff, Middono either should have been fired or Plaintiff should have been offered a tender worker position. *See* ECF No. 63 ¶¶ 26-27.

Plaintiff does not contend that Defendant discriminated against him in any other way. ECF No. 56 ¶ 28. Plaintiff has no information to indicate that Defendant ever discriminated against another inmate based on race. *Id.* ¶ 29. Plaintiff does not contend that Defendant ever used racially disparaging language or otherwise exhibited racial animus outside of the time he denied Plaintiff's tender worker request in May 2022. *Id.* ¶ 30.

In December 2021, the ADF experienced a COVID-19 outbreak. *Id.* ¶ 31. Specifically, one of the kitchen tender workers tested positive for the virus on or about December 10, 2021. *Id.* The ADF's practice of responding to such inmate infections was to isolate the inmate who tested positive, quarantine the other inmates who had been living in the same housing unit and were likely

---

[1] Plaintiff "disputes" this fact, but his dispute is essentially an argument that if Defendant had done a better investigation, he would have realized that either Middono's work status should be changed, or Plaintiff should be allowed to work as a tender. ECF No. 63 ¶ 23. This amounts to legal argument, rather than a factual dispute. *See Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (court may disregard any part of factual statement or response that consists of legal arguments or conclusions).

5

to have been in close contact with the infected inmate, and monitor those inmates for symptoms. *Id.* ¶ 32. Because the inmate who tested positive in early December 2021 was a tender worker, the quarantine protocol required all other tender workers to be quarantined and therefore none of them could continue in their tender worker positions. *Id.* ¶ 33. A new group of tender workers was selected to fill the vacancies created by the quarantine. *Id.* ¶ 34.

Perillo oversaw the process of selecting the new group of tender workers in coordination with Tony Richards, who was the Classification Sergeant at the time. *Id.* ¶ 35. A few days after the new group of tender workers began working, one of them tested positive for COVID-19, which necessitated a second round of isolation, quarantine, and replacement of workers. *Id.* ¶ 36. Plaintiff disputes this, apparently because the email correspondence produced by Defendant does not refer to a second round of hiring for temporary tenders. ECF No. 63 ¶ 36.

Perillo avers that when the need for a second group of tender workers arose, Richards notified Perillo that there were not enough eligible inmates to fill all the open positions. *Id.* ¶ 37. Perillo decided to temporarily suspend the normal eligibility requirements so that enough new tender workers could be selected to fill the open positions and keep the laundry room and kitchen operating at regular capacity. *Id.* ¶ 38. Plaintiff disputes these facts based on the total housing capacity of the ADF of about 900 inmates, which he contends indicates that there were "a lot of eligible inmates to choose from." ECF No. 63 ¶¶ 37-38. But the email correspondence Plaintiff cites indicates that correctional staff had a limited pool of about 13 applicants for five positions and were making exceptions to the normal hiring process. ECF No. 64 at 14-23.

Perillo decided to make the selection decisions himself and directed the Classification Unit to send him a list of candidates for that purpose. *See* ECF No. 56 ¶ 39. He received a list of candidates that included Middono. *Id.* ¶ 40. Under the standard eligibility criteria, Middono was

6

ineligible to be a tender worker. *Id.* ¶ 41. After reviewing the files of Middono and several other candidates, Perillo decided to select Middono as one of the replacements for the vacant tender worker positions and assigned him to work in the kitchen. *Id.* ¶ 42. Perillo originally intended for Middono to fill the tender position on a temporary basis only, so that he would be replaced by an inmate who met the eligibility criteria when possible. *Id.* ¶ 43.

Perillo monitored Middono's job performance and discussed him with the kitchen supervisor, who gave Middono a positive performance review and asked to keep Middono as a kitchen tender. *Id.* ¶ 44. On that basis, Perillo decided to keep Middono in the position in case any more COVID-19 outbreaks occurred. *Id.* ¶ 45. Plaintiff disputes these facts on the basis that Perillo did not directly supervise Middono, but he acknowledges that Perillo kept Middono on as a tender worker because kitchen staff asked him to do so. ECF No. 63 ¶¶ 45-46.

Perillo avers that he instructed Richards to keep Middono in the kitchen tender position as long as his work performance remained positive. *Id.* ¶ 47. Pursuant to this instruction, Middono stayed on as a tender worker until October 2022, when he was removed from the position due to a rules infraction. *Id.* ¶ 48. Plaintiff attempts to dispute this, but the discovery he cites is not directly responsive to the issue of Perillo's communications with Richards, and in any event, Plaintiff acknowledges that Defendant was not the Classification Sergeant in December 2021, and had no involvement in the decisions regarding Middono. *See id.* ¶ 48; ECF No. 63 ¶¶ 46-48.

In May 2023, one of the tender workers was an inmate named Luis Flores. *Id.* at ¶ 49. Flores satisfied the ADF's tender worker eligibility requirements because his most severe charge was aggravated discharge of a firearm, which is a Class 1 felony.[2] *Id.* ¶ 50.

---

[2] Plaintiff's complaint alleged there was a tender worker of Mexican heritage who was accused of a Class X felony. ECF No. 10 at 3. Defendant, in his Declaration, states that Plaintiff identified this inmate as having the last name "Flores" in his discovery responses. ECF No. 56-2 ¶¶ 19-20. Defendant checked the jail's records and confirmed that there was a tender worker named Flores in May 2023 when Plaintiff filed this lawsuit. *Id.* ¶ 21. This inmate's most

7

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine when a genuine dispute of material fact exists, the Court must assess the evidence in the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The party seeking summary judgment bears the initial burden of showing the grounds for his motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once he has done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "A genuine issue of material fact exists only if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* However, a bare contention by the that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences

---

severe charge was aggravated discharge of a firearm. *Id.* at ¶ 22. Plaintiff, in his response to Defendant's factual response, faults Defendant for not producing a copy of this inmate's booking information. ECF No. 63 ¶ 50. But Plaintiff has not brought forth evidence suggesting that Flores (or any inmate other than Middono) was ineligible to be a tender worker under the jail's standard procedures but was selected for that position anyway.

supported by admissible evidence, not those supported by only speculation or conjecture," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

## ANALYSIS

Racial discrimination in the assignment of prison jobs violates the Fourteenth Amendment. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). Fourteenth Amendment employment discrimination claims in the correctional context are analyzed similarly to claims brought under Title VII of the Civil Rights Act. *Dangerfield v. Gardner*, No. 18-cv-1016, 2020 WL 6709937, at *2 (W.D. Wis. Nov. 16, 2020) (citing *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003) ("Our cases make clear that the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection.")). To avoid summary judgment on this claim, Plaintiff needs to come forward with evidence that would allow a reasonable jury to infer that Defendant intentionally treated him differently because of his race. *Lisle v. Welborn*, 933 F.3d 705, 719-20 (7th Cir. 2019).

One manner to prove racial discrimination is through a plaintiff producing evidence showing that, as a member of a protected class, he was treated differently than similarly situated individuals outside of the protected class, and the defendant acted with discriminatory purpose or intent. *Hill v. Thalacker*, 399 F. Supp. 2d 925, 928 (W.D. Wis. 2005), *aff'd*, 210 F. App'x. 513 (7th Cir. 2006). Discriminatory intent may also be established by showing an unequal application of a prison policy, but conclusory assertions of racism are insufficient. *Id.* Here it is undisputed that Plaintiff is a member of a protected class. Defendant argues, however, that race played no role in his decision to deny Plaintiff the tender worker position. Plaintiff argues, in essence, that he was treated differently than a similarly situated white inmate, Middono, who like Plaintiff was ineligible to be hired as a tender worker due to the nature of the charges against him.

To be similarly situated, the plaintiff and the comparator "need not be identical in every conceivable way," *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012), but they must deal with the same supervisor, be subject to the same standards, and have engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them," *Weber v. Univ. Research Ass'n*, 621 F.3d 589, 594 (7th Cir. 2010) (cleaned up). To prevail by showing a similarly situated comparator was treated differently, the plaintiff must show that the comparator was "directly comparable to [him] in all material respects" so as to "eliminate other possible explanatory variables." *Downing v. Abbott Laboratories*, 48 F.4th 793, 805 (7th Cir. 2022) (cleaned up). A comparator must have dealt with the same decisionmaker. *Moreland v. Nielsen*, 900 F.3d 504, 507-08 (7th Cir. 2018).

The undisputed evidence shows that Middono was not similarly situated to Plaintiff. First, Defendant did not select Middono to be a tender worker or decide to keep him in that position after his initial hiring, as he did not become the Classification Sergeant until February 2022. The decision to hire Middono was made by Perillo in response to a shortage of workers due to a COVID-19 outbreak. Perillo decided to relax the eligibility requirements for workers, vetted the candidates himself, and selected Middono as a tender worker. Although this was intended to be a temporary position, Perillo received positive reports about Middono's work. Because of this, and because of the possibility of another COVID-19 outbreak, he instructed Richards, Defendants' predecessor, to keep Middono as a tender worker as long as his job performance remained positive. Pursuant to that directive, Middono remained on the job until September 2022. Plaintiff acknowledges that Defendant was not the Classification Sergeant at the relevant time and had no involvement in the decisions regarding Middono. Because Plaintiff's request to be a tender worker was decided by Defendant, not Perillo, Middono is not a suitable comparator.

The Court also observes that Perillo's decision to hire Middono, during a time when the jail was coping with the effects of a COVID-19 outbreak, is entitled to deference. *See Mays v. Dart*, 974 F.3d 810, 820-21 (7th Cir. 2020) (when evaluating reasonableness of correctional officials' actions, court must "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained."). While Plaintiff contends that Perillo erred in choosing Middono because there were other eligible inmates, this argument is based solely on the overall housing capacity of the jail, not the number of inmates who were eligible to work in the tender position and willing to do so. In any event, there is no indication Perillo's decision to select Middono was motivated by discriminatory animus, and regardless Perillo is not a Defendant in this case.

And Plaintiff does not point to any other evidence that Defendant's actions in denying his request to be a tender worker were motivated by discriminatory animus, nor does he point to any evidence indicating that Defendant exhibited racial bias at any other time. Instead, he argues that Defendant should have conducted a better investigation when Plaintiff drew his attention to a white tender worker named "McDonald" (actually, Middono) who was allowed to work as a tender worker despite disqualifying criminal charges. The fair thing to do, Plaintiff contends, would have been to hire Plaintiff as a tender worker or fire Middono. ECF No. 64 at 5. He also contends that when Defendant became the Classification Sergeant, it was incumbent upon him to "correct" the error in hiring Middono. *See id*. Finally, Plaintiff contends that Defendant approved his request to be a pod worker in May 2022, on the same day that his request to be a tender worker was denied, in order to cover up his discriminatory denial of the tender worker position. *See id.* Plaintiff began the position in July 2022, and contends that he skipped others on a waiting list for this position, although he does not point to any evidence in support of this proposition. ECF No. 64 at 32, ¶ 21.

11

Plaintiff's arguments fail for several reasons. First, the evidence indicates that Perillo's decision to hire Middono was not an error that was incumbent upon Defendant to "correct," but a deliberate decision occasioned by the particular circumstances of a COVID-19 outbreak, circumstances that were not present when Plaintiff applied to be a tender worker in May 2022. Second, any negligence by Defendant in investigating the contents of Plaintiff's grievance and failing to determine that Plaintiff was referring to Middono when he referenced a white inmate who was hired as a tender worker despite facing murder charges would not violate the Constitution. *See Gomez v. Randle,* 680 F.3d 859, 864 (7th Cir. 2012) (defendant cannot be held liable under § 1983 for negligence, or even gross negligence); *see also Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (equal protection claim requires evidence of "intentional or purposeful discrimination", not negligence). Third, to the extent Plaintiff contends that Defendant's decision to deny his tender worker application was unfair in light of the previous hiring of Middono, "the question isn't whether [defendant's] decisions were reasonable, fair, or mistaken" or whether the ADF consistently applied its hiring rules. *Dangerfield*, 2020 WL 6709937, at *4 (citing *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003) (courts do not sit as "super personnel departments")). The question is whether the stated reason for the denial of Plaintiff's request to be a tender worker (that he was ineligible due to the nature of his criminal charges) was a pretext for discrimination. *See id.* There is no evidence that it was.

Nor does Defendant's decision to approve Plaintiff's request to be a pod worker suggest any kind of cover up. It is undisputed that the pod worker position had different requirements, such that Plaintiff's criminal charges were not disqualifying. Plaintiff argues that there was no good reason for the tender worker position to have stricter requirements, but again, correctional authorities are entitled to deference in regard to matters implicating safety and security concerns.

*Mays*, 974 F.3d at 820-21. Plaintiff suggests that it was unusual that he was approved to be a pod worker the same day his request to be a tender worker was denied because there would have been a waiting list of other inmates for those positions. But Plaintiff states that he did not start the position until July 2022, so there may well have been a waiting list. In any event, Plaintiff points to no evidence to support his allegations that he received the pod worker position to deflect from discrimination in the hiring process for tender workers, and his speculation is insufficient to survive summary judgment. *See Lisle*, 933 F.3d at 720 (without evidence of racial motive, claim of racial discrimination was "supported only by speculation and conjecture," which was insufficient to survive summary judgment). For the foregoing reasons, a reasonable jury could not infer that Defendant intentionally treated Plaintiff differently because of his race, and the Court grants summary judgment to Defendant.

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

## **CONCLUSION**

Defendant's motion for summary judgment [54] is granted. The Clerk is directed to enter final judgment and send a copy of this order to Plaintiff. Civil case terminated.

**DATE: October 29, 2025**

_____
**Jorge L. Alonso**
**United States District Judge**